UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

ALLEN CORPORATION OF AMERICA,
INC.,

    Plaintiff,

v.

REGINALD ZAYAS,
RSP PROFESSIONAL GROUP, L.L.C.,
and NIAMBI D. STEWART,

    Defendants.

Civil Action No. TDC-14-3719

MEMORANDUM OPINION

This matter is before the Court on a Motion for Writ of Attachment Before Judgment and Temporary Restraining Order, ECF No. 5, filed by Plaintiff Allen Corporation of America, Inc. ("Allen"). The Court has reviewed the Motion and supporting materials and held an *ex parte* hearing on December 2, 2014. For the following reasons, the Motion is GRANTED.

BACKGROUND

The following facts are taken from affidavits submitted by Allen in support of its Motion. Fed. R. Civ. P. 65(b)(1). Allen is a professional services company based in Virginia. Affidavit of Timothy S. Schimkus ¶¶ 4-5, ECF No. 5-1. Defendant Reginald Zayas ("Zayas") was hired as Controller at Allen's Virginia headquarters in 2005. *Id.* ¶ 5. In his role, Zayas "was afforded great trust by Allen" and had access to its bank accounts and financial information until he was terminated in October 2014 as part of a larger downsizing effort. *Id.* ¶¶ 5-6. A review of Allen's accounts after Zayas's termination revealed that Zayas had stolen more than $2.5 million from Allen beginning in March 2012. Specifically, Zayas authorized and effected transfers from

Allen's bank account to the Capital One Bank accounts of: (1) Defendant RSP Professional Group, L.L.C. ("RSP") totaling $2,404,865 during the period between March 30, 2012 through August 27, 2014; (2) Defendant Niambi D. Stewart ("Stewart") totaling $74,250 during the period between March 14, 2013 through August 14, 2014; and (3) non-party Tiffany J. Nance ("Nance") totaling $28,650 during the period between January 30, 2013 through August 21, 2014. Id. ¶¶ 9, 11, 13, 16. These payments were never authorized by Allen, and RSP, Stewart, and Nance were never vendors to Allen. Id. ¶¶ 10, 12, 14-15. In fact, RSP is Zayas's own limited liability company, see Affidavit of Timothy B. Hyland, Exs. B-C, ECF No. 5-2, Stewart is known to be a friend of Zayas who often visited him at Allen, Schimkus Aff. ¶ 12, and Nance is the mother of Zayas's child, to whom he owed child support,[1] Hyland Aff. ¶ 3(E) & Ex. E.

Allen filed suit alleging breach of duty of loyalty and fiduciary duty (Count I) and fraud (Count II) against Zayas, and violation of Virginia Business Conspiracy Law (Count III), civil conspiracy (Count IV), unjust enrichment (Count V), and constructive trust (Count VI) against Zayas, RSP, and Stewart (collectively, "Defendants"). Compl. ¶¶ 23-55. In the present Motion, Allen requests that the Court issue a writ of attachment before judgment and temporary restraining order ("TRO") without notice to freeze Defendants' Capital One Bank accounts and to bar them from selling, disposing of, or transferring any assets. Mem. TRO Mot. at 13.

## DISCUSSION

### I. Legal Standard

A TRO "is intended to preserve the status quo only until a preliminary injunction hearing can be held." Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 422 (4th Cir. 1999).

---

[1] Because Allen acknowledges that it is possible that Nance was unaware that the transferred funds were fraudulently obtained, it has not named her as a defendant in this case and does seek attachment of her bank account. Mem. TRO Mot. at 2 & n.1, ECF No. 5-3.

2

Under Federal Rule of Civil Procedure 65, the court may issue a TRO without notice to the adverse party or its attorney only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the movant's attorney certifies in writing why efforts to give notice should not be required. Fed. R. Civ. P. 65(b)(1). Generally, the substantive standard for granting a TRO is the same as for a preliminary injunction. *See, e.g., Maages Auditorium v. Prince George's Cnty, Md.*, 4 F. Supp. 3d 752, 760 n.1 (D. Md. 2014). Thus, to obtain a temporary restraining order or a preliminary injunction, the plaintiff must establish that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

**II.   Authority to Attach Assets**

Allen seeks a TRO to obtain prejudgment attachment of Defendants' bank accounts at Capital One Bank and to enjoin Defendants from dissipating their assets. Federal Rule of Civil Procedure 64 provides that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment," including attachment. Fed. R. Civ. P. 64(a)-(b). Maryland law provides for prejudgment attachment under certain conditions, including where a debtor is a corporation with no resident agent in Maryland and the action involves claims to property in Maryland. Md. Code Ann., Cts. & Jud. Proc. § 3-303(b)(2) (West 2014). RSP is a Delaware limited liability company that had reported a registered agent in Maryland, but that "forfeited" its status in 2005, Hyland Aff. ¶ 3(D) & Ex. D, meaning that it no longer has a valid "legal existence" in Maryland, *see* Maryland State Department of Assessments & Taxation, *What Does It Mean That My Business*

3

*Entity is "Not in Good Standing" or "Forfeited"* 1 (2012), *available at* http://www.dat.state.md.us/sdatweb/entitystatus.pdf. Therefore, it currently has no valid resident agent. Thus, RSP is subject to prejudgment attachment under § 3–303(b)(2).

With regard to all three Defendants, the same statute also provides that a court may order attachment before judgment where the debtor "fraudulently contracted the debt or incurred the obligation which is the subject of the pending action." Md. Code Ann., Cts. & Jud. Proc. § 3–303(e)(2). Generally, attachment under § 3–303(e) is limited to actions based on a contract for liquidated damages. *Id.* § 3–304(b). However, in *Levitt v. State of Md. Deposit Ins. Fund Corp.*, 505 A.2d 140 (Md. Ct. Spec. App. 1986), the Court of Special Appeals of Maryland made an exception, explaining that although "neither equity nor fundamental fairness will allow the prejudgment attachment of an alleged debtor's assets merely because a complaint asserts that the debtor has perpetuated a fraud," there are "extraordinary situations not covered by Cts. & Jud. Proc. Art. § 3–303 in which precisely that kind of precautionary action is not only desirable, but necessary." *Id.* at 146. The court therefore held that "when fraud is alleged and the facts as pleaded indicate a substantial likelihood of fraud, as well as the probability that the defendants will, before judgment, dispose of assets fraudulently acquired, a court has jurisdiction to enjoin the defendants' dissipation of assets." *Id.* at 147.

In *Teferi v. Dupont Plaza Associates*, 551 A.2d 477 (Md. Ct. Spec. App. 1989), where an employer hotel alleged that its former employee had embezzled funds while serving as the hotel's controller, the Court of Special Appeals held that, under *Levitt*, the trial court had jurisdiction to enjoin the defendant from dissipating his assets. *Id.* at 481-83. *See also United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 499-501 (4th Cir. 1999) (citing *Levitt* and *Teferi* with approval to explain that the district court had authority under Maryland law, as

4

incorporated by Federal Rule of Civil Procedure 64, to enter a preliminary injunction freezing the defendants' assets in a fraud case). As discussed in greater detail in the next section, in this case, Allen likewise alleges fraud, the facts indicate a substantial likelihood of fraud, and there is a probability Defendants will dissipate the assets. Thus, this case meets the requirement of *Levitt*, and this Court may order an attachment before judgment and enjoin Defendants from dissipating their assets.

### III. Temporary Restraining Order

Having received and reviewed the affidavits and attorney statement[2] required by Federal Rule of Civil Procedure 65(b)(1), the Court concludes, provisionally and pending input from Defendants at a future preliminary injunction hearing, that the requirements for a TRO have been satisfied, and that Allen has sufficiently shown that Defendants are likely to attempt to transfer or dissipate the funds to justify granting of the TRO without notice.

#### A. Likelihood of Success on the Merits

To meet the first requirement for a TRO, Allen must demonstrate that it is likely to succeed on the merits. In this case, in order to obtain a ruling to freeze assets under *Teferi* and *Levitt*, Allen must show that it is likely to succeed on its fraud claim against Zayas and its conspiracy to commit fraud claim against the Defendants.

Federal courts exercising diversity jurisdiction over state law claims apply the choice of law rules of the forum state. *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 491 (1941)). Under Maryland law, the tort doctrine of *lex loci delicti* provides that the substantive law to be applied to tort

---

[2] Allen's counsel satisfied this requirement with Part IV.C of the memorandum in support of the Motion, which he signed and explicitly identified as having been offered to meet this requirement. Mem. TRO Mot, pt. C, at 12

claims is that of the state in which the wrong occurred, in this case, Virginia. *Philip Morris v. Angeletti*, 752 A.2d 200, 230 (Md. 2000). Virginia law defines fraud as a false representation of a material fact, made intentionally and knowingly, with intent to mislead, which was relied upon by and resulted in damages to the misled party. *Sales v. Kecoughtan Hous. Co.*, 690 S.E.2d 91, 94 (Va. 2010). The misrepresentation may take the form of silence or failure to speak. *Nationwide Mut. Ins. Co. v. Hargraves*, 405 S.E.2d 848, 851 (Va. 1991). Civil conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose. *The Country Vintner, Inc. v. Louis Latour, Inc.*, 634 S.E.2d 745, 751 (Va. 2006) (internal citation and quotation marks omitted).

In this case, Allen has submitted a sworn affidavit by its Chief Financial Officer, Timothy S. Schimkus, stating that Zayas was Allen's long-time Controller and had access to its bank accounts, receipts, deposits, and financial information at all times. Schimkus Aff. ¶ 6. Schimkus states that since 2007, Zayas "reported and represented to [Shimkus] and to Allen Corp., at all times . . . that Allen Corp.'s receipts and disbursements were properly and accurately accounted for" and "did not disclose any material shortfalls in Allen Corp.'s accounts." *Id.* ¶ 7. Schimkus further states that he and Allen "believed Zayas' reports of representations regarding its receipts, disbursements and accounting" and relied upon them. *Id.* A review of Allen's accounts after Zayas's termination, however, revealed that Zayas had "authorized and effected" unauthorized funds transfers from Allen's accounts in the amounts of $2,404,865 to RSP, $74,250 to Stewart, and $28,650 to Nance, none of whom was ever a vendor to Allen. *Id.* ¶¶ 9, 11, 13-14. Based on these facts, the Court provisionally concludes that there is a substantial likelihood that Zayas engaged in fraud and that RSP, a limited liability corporation registered by Zayas to his home address, *see* Hyland Aff., Exs. B-C, and Stewart, Zayas's friend who often visited him at work

and who had no other legitimate reason to receive direct wire transfers from Allen, Schimkus Aff. ¶¶ 12, 14, were acting in concert with Zayas to obtain the funds through fraud.

### B. Irreparable Harm

Allen must also establish that it is likely to be irreparably harmed absent a preliminary injunction. The United States Court of Appeals for the Fourth Circuit has recognized that even if a loss can be compensated by money damages at judgment, "extraordinary circumstances may give rise to the irreparable harm required for a preliminary injunction" in those instances "where the harm suffered by the plaintiff from denying the injunction is especially high in comparison to the harm suffered by the defendant from granting it." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994). As an example of such a situation, the Fourth Circuit cited the Seventh Circuit's view that irreparable harm may exist where "[d]amages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected." *Id.* (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)).

In this case, Defendants are alleged to have embezzled over $2.5 million from Allen through fraudulent means, conduct which arguably constitutes criminal activity. Zayas has been terminated from Allen, and RSP is no longer authorized to conduct business in Maryland. Under these circumstances, there is a strong likelihood that, in the absence of attachment, Zayas may move or dissipate the allegedly stolen funds, and that Zayas, who may also face criminal prosecution for this conduct, will be unable through legitimate means to generate income sufficient to pay a judgment that could potentially reach $2.5 million. *See United States ex rel. Taxpayers Against Fraud v. Singer Co.*, 889 F.2d 1327, 1330-32 (4th Cir. 1989) (upholding a district court's finding of irreparable harm where the principal defendant was "insolvent" and its

assets were "in danger of dissolution and depletion"); *Buffalo Wings Factory, Inc. v. Mohd*, No. 1:07cv612 (JCC), 2008 WL 4699803, at *4 (E.D. Va. 2008) (finding irreparable harm where, without a TRO, the plaintiff would have had "little to no opportunity to collect the money it [was] owed" because the defendants were shown to either have sparse personal assets or be empty shell corporations). The Court therefore finds adequate evidence of irreparable harm in this case.

### C. Balance of Equities

The Court also concludes that the balance of equities weighs in favor of Allen. For the reasons explained in the previous section, there is a strong likelihood that, absent a temporary restraining order and attachment of Defendants' assets, the funds will be dissipated or transferred, and that Zayas in particular may become insolvent before Allen is able to obtain a final judgment and collect the allegedly stolen funds from Allen. On the other hand, particularly because the TRO is limited to 14 days and is subject to a motion to dissolve, any burden that may result if it is later revealed that this TRO was improperly granted and Defendants' assets should not have been frozen would constitute a limited, temporary hardship.

### D. Public Interest

Finally, the Court agrees that the public interest weighs in favor of Allen. Allen alleges that Defendants fraudulently obtained over $2.5 million from Allen and has shown, at this early stage, a likelihood of success on the merits of their claims. It is in the public interest to prevent the dissipation of illegally-obtained assets, particularly of such a substantial sum.

### E. TRO Without Notice

Based on the foregoing analysis, the Court finds that the requirements for a TRO are satisfied. Given the nature of the activity at issue in this case, embezzlement of over $2.5 million that arguably constitutes criminal activity, and the risk of dissipation of assets, *see supra* part

III.B., the Court accepts Allen's assertion that providing notice to Defendants could pose a substantial risk that Defendants could transfer or otherwise dissipate their assets before entry of a preliminary injunction. Thus, issuance of an *ex parte* TRO, though ordinarily disfavored, is warranted in this instance. The potential harm to Defendants from such an order can be addressed by the procedures under Rule 65, which initially limit the TRO to 14 days and require a hearing on a motion to dissolve the TRO on two days' notice and an expedited hearing on a preliminary injunction. Fed. R. Civ. P. 65(b).

## IV. Bond

Under Federal Rule of Civil Procedure 65, a court may issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). In order to ensure that there are funds to compensate Defendants should they successfully establish that the TRO should not have issued and that they wrongfully sustained damages as a result of the TRO, the Court requires Allen to post a bond of $100,000.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1. The Motion for Writ of Attachment Before Judgment and Temporary Restraining Order, ECF No. 5, is GRANTED;

2. All funds held in any and all bank accounts at Capital One Bank, owned or controlled in whole or in part by Reginald Zayas, are hereby frozen, and no payments or disbursements from any such accounts shall be made until further order of this Court or until vacation or expiration of this Order;

3. All funds held in any and all bank accounts at Capital One Bank, owned or controlled in whole or in part by RSP Professional Group, LLC, are hereby frozen, and no payments or disbursements from any such accounts shall be made until further order of this Court or until vacation or expiration of this Order;

4. All funds held in any and all bank accounts at Capital One Bank, owned or controlled in whole or in part by Niambi D. Stewart, are hereby frozen, and no payments or disbursements from any such accounts shall be made until further order of this Court or until vacation or expiration of this Order;

5. Reginald Zayas and RSP Professional Group, LLC shall not sell, transfer, or dispose of any assets until further order of this Court or until vacation or expiration of this Order;

6. Niambi D. Stewart shall not sell, transfer, or dispose of any assets received, directly or indirectly, from Capital One Bank commercial checking account number 5004322945, held by Allen Corporation of America, Inc.;

7. The Court's Order will take effect upon posting of a bond in the amount of $100,000; and

8. This Order shall expire on Thursday, December 18, 2014, at 9:00 a.m., unless extended by further order.

A separate Order follows.

Date: December 4, 2014, 9:00 a.m.

THEODORE D. CHUANG
United States District Judge